28 C.C.P.A. (Patents)

In re BERGEN.

Patent Appeal No. 4415.

Court of Customs and Patent Appeals.

June 9, 1941.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting all of the claims (Nos. 4, 7, and 11 to 14, inclusive) in appellant's application for a patent for an alleged invention relating to improvements in an alloy steel piston ring for use in internal combustion engines.

The alleged invention is sufficiently described in the appealed claims, of which claims 4 and 12 are illustrative. They read:

"4. An alloy steel piston ring for internal combustion engines which is highly resistant in service to wear, scuffing, scoring and loss of tension, said steel containing from an effective amount to about 4% of metal of the group consisting of: vanadium, molybdenum, chromium, manganese, silicon, nickel, copper and aluminum, the balance of said steel consisting substantially of iron."

"12. A piston ring for internal combustion engines made from an alloy steel containing: about .3 to 4% chromium, about .05 to 1% vanadium, and about .5 to 1.5% carbon, the balance of said steel consisting substantially of iron."

The references are: Fay, 1,284,279, Nov. 12, 1918; Marshall, 1,965,294, July 3, 1934.

The patent to Fay relates to a packing ring composed of tungsten steel in which "tungsten constitutes from eighteen to twenty-five per cent. of the total weight of the steel." The packing ring is "adapted for use with bodies of relatively small diameter (such as sliding sleeve valves and pistons for small-bore cylinders)." The object of the invention, as stated by the patentee, is to "produce a ring of this character of great heat-resisting capacity, whereby the ring will be able to withstand high temperatures without losing its elasticity; also to produce a ring which is particularly *free from abrasion.*" (Italics not quoted.)

The patent to Marshall relates to packing or piston rings made of high carbon steel (steel containing over .5% carbon) for use in internal combustion engines. The patentee states that he has found that piston rings of high carbon steel "may be run for a far longer time, even under the ex-

Ward, Crosby & Neal, of New York City (Raymond J. McElhannon, of New York City, of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

acting conditions of a continuous uninterrupted run, than does the ordinary cast iron ring, outlasting the latter many times, acquiring a high polish, and causing no appreciable wear or scoring of the cylinder wall," and that he has "devised a practical process which results in the production of perfect rings from ductile material such, for example, as high carbon steel, *including so-called 'alloy steels,' such rings having all of the desired physical characteristics requisite in a piston ring* and being capable of production at a cost which is substantially less than that involved in making ordinary cast iron rings." (Italics not quoted.)

All of the appealed claims were rejected by the Primary Examiner on the references of record, and appealed claims 4 and 11 were also rejected on the ground that they were indefinite and ambiguous.

Relative to the form of claims 4 and 11, the examiner stated that they call for an alloy steel piston ring "containing," as stated in each of those claims (except as to the order in which the metals are enumerated), "from an effective amount to about 4% of metal of the group consisting of: vanadium, molybdenum, chromium, manganese, silicon, nickel, copper and aluminum"; that as those elements do not constitute or belong to a recognized chemical or metallurgical group "their specific inclusion in the claims appears to be due merely to the fact that applicant has experimented with many elements and has found these to be satisfactory"; and that "Such grouping according to experimental results of substances which do not form a known chemical or metal-urgical group does not conform to the practice authorized in Ex parte Markush, 340 O.G. 834, as construed in Ex parte Burke, 441 O.G. 509 and renders the claims indefinite and ambiguous."

In holding that the appealed claims were unpatentable over the references of record, the Primary Examiner said: "Patentability for such claims could be predicated only on one or two theories—first—that the alloy itself was patentably novel and that applicant in specifying the article made therefrom had unnecessarily limited himself and—second—that there has been a new use of an old material, which produced new, unexpected and useful results.

"The first theory is rendered untenable by the fact that, applicant originally presented claims for the alloy (claims 1 and 2) that they were rejected on prior art and were canceled.

"The second theory seems to be the one on which applicant relies. The qualification of utility is conceded to be established by applicant's arguments and affidavit. The requirement of novelty is, in general, negatived by Marshall's suggestion of the use of alloy steels for piston rings. * * *

"Now the suggestion of Marshall that alloy steels be used .for internal combustion engine piston rings and the use of one such alloy by Fay for a pump piston ring clearly negative the idea that such use is an innovation and the fact that applicant, with constructive knowledge of Marshall's suggestion and Fay's use, decided to try out numerous alloys and found that many, perhaps most, of them were suitable, seems to negative any very great element of surprise for him."

The Board of Appeals affirmed the decision of the Primary Examiner rejecting the appealed claims on the prior art and also rejecting appealed claims 4 and 11 on the ground that they were not in proper form. With reference to the prior art cited, the board called attention to the fact that the patentee Marshall's piston rings were stated to be made not only of high carbon steel but also of "alloy steels." The board then said:

"In general, the physical characteristics of the commoner steel alloys are wellknown and it is our view that the selection of one of these alloys, broadly suggested by Marshall, does not amount to invention.

"Certain of the claims are rather specific as to the proportions of the alloying metal but we are not satisfied that there is anything especially critical about the proportion used and therefore affirm the examiner's action as to claims 4, 7, 11, 12, 13 and 14."

Although it is stated in appellant's fifth reason of appeal that "The Board of Appeals *erred in considering* the Examiner's objections to the claims 4 and 11 as to form, and *erred in not refusing to consider said objections as to form,* inasmuch as said claims were never finally rejected on any such ground, the Examiner's objection on this ground first appearing in his 'Examiner's Statement' addressed to the Board of Appeals," it is not argued here that the board was without authority to consider the examiner's rejection of claims 4 and 11 on the ground that they were improper as to form. (Italics not quoted.) The question of whether claims 4 and 11 were proper as to form was raised for the first time in the Primary Examiner's state-

ment to the Board of Appeals, and as appellant did not withdraw his appeal to the Board of Appeals and present that question to the Primary Examiner, which he had a right to do, the board had authority to consider that ground of rejection as to those claims. See Ex parte Mevey, 1891 C.D. 115, 56 O.G. 805; In re Mulligan, 83 F.2d 917, 23 C.C.P.A., Patents, 1220, 1222. Furthermore, the question as to whether claims 4 and 11 are proper in form is not raised in appellant's reasons of appeal. Accordingly, the decision of the Board of Appeals, affirming the decision of the Primary Examiner holding that claims 4 and 11 were not in proper form, must be affirmed.

It is contended here by counsel for appellant that appellant's inventive concept "consists essentially in discovering the cause of piston ring scuffing and scoring and devising a remedy based on this information, the remedy consisting in substituting for the materials—cast iron and plain carbon steel—theretofore employed in piston rings, a material new for this purpose and one *developing new and unexpected properties when so used, namely, an alloy steel having the relatively narrow range of analysis specified in the claims.* The courts have held such contributions to be inventive." (Italics ours.) It is further contended by counsel for appellant that in neither of the references of record is the matter of piston ring scuffing and scoring referred to; and that "A substitution of materials in an old article *developing new and unexpected properties* and uses of the articles or greater utility or more efficient action is inventive," and cases are cited in support of the latter contention. (Italics not quoted.)

Appellant states in his application that an object of his alleged invention is to provide a piston ring—"which possesses to an extent not heretofore attained, the *qualities requisite to satisfactory performance* in internal combustion engines for automotive and like uses, namely: resistance to wear, to scuffing, to scoring, and the ability to retain high strength at high temperatures, such that the ring will not soften or temper at motor operating temperatures, thereby to prevent excessive wear and loss of tension with resulting leakage and loss of compression.

"*Scoring is a wearing or abrading* of the piston ring surface in contact with the cylinder wall. Scuffing is the occurrence on the wearing surface of the ring, of bright spots which appear harder and which stand out in relief against the surrounding surface areas. Both scuffing and scoring by permitting an escape of gases from the cylinder, result in loss of compression." (Italics ours.)

Appellant further states in his application that *scoring and scuffing of piston rings* may be prevented by adding alloying elements to plain carbon steels, such alloying elements being molybdenum, chromium, manganese, silicon, nickel, copper, aluminum, and vanadium.

It will be observed that the patentee Fay stated that a piston ring composed of an alloy steel, tungsten steel, has great heat resisting capacity and is particularly free from abrasion; that is, scoring or wearing or abrading of the piston ring surface in contact with the cylinder wall. However, no reference is made in the Fay patent to the prevention of scuffing by the use of his particular alloy steel.

The patentee Marshall states that, although *cast iron piston rings* have many of the desired characteristics necessary in a piston ring, such, for example, as the "ability to maintain a good bearing surface against the cylinder wall without scoring or abrading the latter when run at high speeds," piston rings made of cast iron have other characteristics not so desirable, among which, he states, is extreme brittleness. The patentee pointed out that in an effort to avoid the undesirable characteristics of cast iron piston rings, the art employed other materials such as low carbon steel, but that piston rings composed of low carbon steel possess one vital defect, the inability to "form a good wearing surface with the cylinder wall, resulting in rapid scoring and destruction of the cylinder," and that piston rings made of high carbon steel, including so-called "alloy steels," have all the "desired physical characteristics requisite in a piston ring * * * for forming a good bearing against the cylinder wall." The patentee did not state, however, that his rings were resistant in service to scuffing and scoring.

No contention is made here by counsel for appellant that the Primary Examiner was in error in stating that appellant was not entitled to claims covering his alloy steels per se, or that the Board of Appeals was in error in stating in its decision that "In general, the physical characteristics of the commoner steel alloys are well known." Nor can it be successfully contended that

the patentee Marshall did not suggest that piston rings made of alloy steels had all the "desired physical characteristics requisite in a piston ring * * * for forming a good bearing against the cylinder wall."

. Appellant states in his application that "I have *observed for example that generally speaking small additions,* i. e. up to about 4% of one or more of the alloying elements above noted *are sufficient;* and *more specifically that highly satisfactory results are obtained by additions to plain carbon steels of about:* .05 to 1% vanadium; .05 to 2% molybdenum; .3 to 25% chromium; .3 to 2% manganese; .5 to 4% silicon; .25 to 3% nickel; .2 to 2% copper; or .1 to 2% aluminum. *Certain further beneficial results may be obtained by combinations of two or more of the elements above enumerated."* (Italics ours.) It is apparent, therefore, that appellant does not teach that the percentages of one or more of the alloying elements enumerated in the appealed claims are critical.

That appellant's piston rings are new in the sense that the prior art did not teach the percentages of the alloying elements set forth in the appealed claims and that they are useful, is not questioned. However, in view of the facts hereinbefore set forth, we are unable to hold that the use of alloy steels in the manufacture of piston rings, as set forth in the appealed claims, produced unexpected results and that the board erred in holding that the appealed claims were not patentable over the references of record.

For the reasons stated, the decision of the Board of Appeals is affirmed.

Affirmed.